Commonwealth *v.* Goslee, Petitioner.

404

Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*James A. Caldwell,* for petitioner.

*Kenneth E. Fox, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, November 14, 1967:

Arthur Goslee, Lewis Forsyth and Keith Zeigler were tried in June, 1966 in Lawrence County. The cases were consolidated for trial, the jury finding both Goslee and Forsyth guilty of conspiracy, burglary, larceny and receiving stolen goods and Zeigler guilty of conspiracy and receiving stolen goods. Goslee and Forsyth appealed their convictions to the Superior Court; after an affirmance without opinion, both filed petitions for allocatur which are hereby granted.

Viewing the evidence in a light most favorable to the Commonwealth, the record discloses that some time between 2:30 p.m. October 16, 1965 and 2:30 p.m. October 18 a house was burglarized. One of the investigating officers remembered that on the night of the 17th he had seen appellant Goslee standing on the corner one-half block away from the scene of the offense conversing with another, unrecognized individual.[1] This information coupled with the fact that Goslee had a prior burglary conviction formed the basis of a clearly invalid search warrant.[2] Armed with this warrant, three officers traveled to Goslee's apartment, there arrested Goslee and Forsyth and then searched the apartment finding some of the stolen items.[3] Appellants'

---

[1] The officer also knew that Goslee's mother lived across the street from the burglarized residence and that the appellant often visited his mother. From this the Commonwealth contends that Goslee learned from his mother that the residence was unoccupied. Nothing was produced at trial to support this assertion and it is equally consistent to assume that Goslee's presence in the neighborhood was produced by one of his frequent visits to his mother.

[2] The invalidity of the search warrant was conceded at trial by the Commonwealth.

[3] Appellants insist that a search pursuant to the illegal warrant preceded the arrest and that the arrest was predicated upon the fruits of this illegal search. Our disposition of this litigation renders acceptance of appellants' version unnecessary.

counsel contested the legality of the arrest and resulting search at a suppression hearing and again at trial.

The Commonwealth properly recognized that, given the invalidity of the search warrant, admission at trial of the results of the search could have been justified only if incidental to a lawful arrest. Two contentions are advanced by appellants to demonstrate the invalidity of their arrests: (1) Criminal Procedure Rule 108 requires that arrest warrants be obtained for all arrests for offenses punishable by a sentence of more than two years; since no arrest warrant was obtained in this case, the arrest under this rule is invalid; and (2) The arresting officers lacked probable cause to arrest appellants.

Rule 108(b)(1) provides: "A warrant of arrest shall be issued when: (1) The offense charged is punishable by a sentence of imprisonment of more than two years." The use of the mandatory "shall" does give linguistic merit to appellants' argument. However, Rule 108, patterned after Federal Rule of Criminal Procedure 4, was designed to permit discretionary use of a summons instead of warrant in certain cases and has no impact or effect on the rules governing arrests *without* warrant existing prior to adoption of the rule. That the import of Rule 108 is not a modification of existing doctrines is made evident by an examination of the statute under which this rule was promulgated. The Act of July 11, 1957, P. L. 819, §1, 17 P.S. §2084 indicates that the rules of criminal procedure "shall neither abridge, enlarge nor modify the substantive rights of any party"; to hold that arrest warrants are required in all cases involving possible sentences of more than two years would be an enlargement.

We do find, however, that appellants' second contention is meritorious and therefore grant both appellants a new trial. An affidavit prepared by the arresting officer, Jesse C. Gunn, after the arrest indi-

cates that the following formed the basis for arrest: "He [the arresting officer] knows that the mother of Arthur Goslee lives approximately two doors away from the Speers home [the burglarized residence]. He personally saw Arthur Goslee at or about 10:00 p.m. Sunday night, October 17, 1965 at the corner of Wilmington Avenue and Sheridan Avenue (½ block from Speer house). He knows from his work as a detective that Arthur Goslee is a known Burglar." Our cases have long insisted that warrantless arrests must be predicated upon probable cause, i.e., where the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed and that the person to be arrested has committed or is committing the offense. *Commonwealth v. Ellsworth,* 421 Pa. 169, 218 A. 2d 249 (1966); *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A. 2d 304 (1963). Arrests predicated upon "mere suspicion" do not meet this standard. *Wong Sun v. United States,* 371 U.S. 471, 83 S. Ct. 407 (1963).

We think it clear that the arresting officer, relying only on appellant Goslee's presence near the scene of the crime within a two-day period and his past conviction, was acting upon mere suspicion.[4] Nothing appears of record to indicate that Goslee's actions, as opposed to his presence alone, were "suspicious." To sustain this conviction we would be forced to countenance a proposition that presence plus a prior conviction is sufficient for arrest—a proposition we cannot accept.

The present case thus bears a striking resemblance to *Commonwealth v. One 1958 Plymouth Sedan,* 418 Pa. 457, 211 A. 2d 536 (1965). In *Plymouth Sedan* we

---

[4] Since the arresting officer did not even know whether Forsyth was the other individual talking to Goslee, *a fortiori* there was no probable cause to support Forsyth's arrest.

408

held that the fact that an automobile crossing the Benjamin Franklin bridge into Philadelphia was "low in the rear" during the Christmas season (a time when nontaxed liquor is frequently transported from New Jersey) was insufficient to generate probable cause for arrest. If a suspicious looking automobile in an area of probable crime is not sufficient, then presence alone can never be. What we said in *Plymouth Sedan* bears repetition (supra at 466, 211 A. 2d at 540) : "Such circumstances may have aroused speculation or suspicion on the officers' part but they do not meet the standard and quality of evidentiary proof required to satisfy the mandate of the Fourth Amendment and the decisional law interpretive thereof."[5]

The petitions for allocatur are granted. The orders of the Superior Court are reversed, the judgments of the Court of Oyer and Terminer of Lawrence County are reversed and new trials are granted.

---

[5] In its brief, the Commonwealth correctly admits that Forsyth must be given the benefit of any claim available to Goslee. As in *Jones v. United States*, 362 U.S. 257, 80 S. Ct. 725 (1960), Forsyth was present in the apartment with Goslee's permission and was sleeping there at Goslee's invitation.